

SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT

_____X

MICHAEL F. GOLDEN,

Plaintiff

**INDEX NO.
06-CV-1587
(DC) (THK)**

-against-

**AMENDED
COMPLAINT**
·Electronically Filed

NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL PROTECTION,

**JURY TRIAL
DEMANDED**

Defendant

_____X

Plaintiff Michael F. Golden, by his attorneys, **EGAN LAW FIRM,**

complaining of defendant New York City Department of Environmental

Protection. ("defendant" or "DEP") respectfully alleges as follows:

## Parties, Jurisdiction, Venue

1.    Michael F. Golden is currently employed by defendant DEP as a

Lab Associate I.  He has been employed by the DEP since January 13, 1992.

2.    DEP is an agency of the City of New York charged with the

protection and maintenance of the environment in New York City.  It

monitors the City's waste water treatment systems and its water supply.

DEP is also responsible for enforcement of the air, noise and hazardous

materials laws and rules; billing and collection of water and sewer use

charges; review of environmental impact statements; and administration of

the Environmental Control Board. Golden has worked in various units at DEP during the course of his employment there.

3. Plaintiff suffers from torticollis, a neurological disorder characterized by involuntary muscle spasms and shaking in the head and neck area. In a work related accident in 1999 plaintiff suffered a significant injury to his spine, resulting in pinched nerves in his neck. The spinal injury also exacerbated the torticollis causing plaintiff to shake more than he had prior to the accident. Since that time, plaintiff has required extensive physical therapy. Further, because of periodic flare ups of the back injury, plaintiff has also been required to take from time to time leaves of absence for physical therapy and to rest his back.

4. In 1995, plaintiff began working under the supervision of Trikam Patel, Chief of the Special Projects Laboratories. It has been the policy and practice of Trikam Patel, with the knowledge and consent of DEP management, to favor employees under his supervision of Indian descent and where possible to replace non-Indian employees with employees of Indian descent. In the Metals Unit, where plaintiff worked for three years, after Patel became chief, Patel was permitted to replace a non Indian supervisor with an Indian supervisor, Vikram Shah. In the three years that Vikram Shah supervised plaintiff in the Metals Unit, the five non Indian employees in the unit, including plaintiff, left.

5. Upon information and belief, in addition to plaintiff, at least four non Indians supervised by Trikam Patel have brought actions before the New

2

York State Human Rights Commission charging DEP with discrimination by Patel and other Indians on the basis of race and national origin.

6.     Over the period that plaintiff has been working at DEP, he has been discriminated against in the terms and conditions of his employment and has been subjected to discipline for conduct which did not result in discipline for Indian co-workers.

7.     Golden was also repeatedly harassed about his disability and because of his race and national origin and required to work in a pervasively hostile environment sufficiently severe to altar the terms and conditions of his employment and create an abusive work environment.  Although plaintiff repeatedly complained to his supervisors, to management and to defendant's Human Resources Department about the discrimination and harassment, it was allowed to continue.

8.     Supervisors within DEP also retaliated against Golden for reporting incidents of malfeasance and for cooperating with a fellow employee in the commencement of a suit charging DEP with discriminating on the basis of race and national origin.

9.     Plaintiff timely filed a charge with the New York State Division of Human Rights and U.S. Equal Employment Opportunity Commission.  The EEOC issued notice of right to sue.

10.    The jurisdiction of this court is based on Title VII of the Civil Rights Act of 1964 as amended, the Americans With Disabilities Act and the Family and Medical Leave Act.

3

11.    Pursuant to 28 U.S.C. 1391(c), venue in this district is proper as a district in which defendant is subject to personal jurisdiction.

## FACTS

12.    Golden began his employment with DEP on January 13, 1992 as a Civil Service Laboratory Associate in the Bureau of Wastewater Treatment's Wards Island Special Projects Laboratory.  At the time of his employment, plaintiff suffered from torticollis, a neurological disorder characterized by involuntary muscle spasms and shaking in the head and neck area. Torticollis is also painful.  In 1999, plaintiff suffered an injury to his back in an accident that occurred at work.  The injuries, which were permanent, exacerbated the torticollis and limited the amount of physical pressure he was able to put on his back.  Moreover, the injury caused constant pain.

13.   In 1993, Trikam Patel supervised the Organic Laboratory located in Wards Island and Lefrak City. It was his practice to favor employees under his supervision of Indian nationality or descent and where possible to replace non-Indian employees with employees of Indian nationality or descent.  In 1993, Patel fired Jian Zhong Qi, a Chinese.

14.    Patel assigned non-Indian assistant and associate chemists to do low level work in the lab, such as washing glassware for others and washing and packing sample jars but not assistant or associate chemists of Indian nationality or descent.  In 1995, when Patel was promoted to chief of Special Projects Laboratories, he was allowed to replace non Indian supervisor of the Metals Unit Max Obra, with Vikram Shah.  Plaintiff was working in the Metals Unit at the time Vikram Shah became its supervisor.

15.    Shah sought to intimidate and harass plaintiff by yelling at him, papering his personnel file with complaints about failing to do activities which were not in fact part of plaintiff's job, slamming his hand in a physically threatening manner down on a table within a few feet of plaintiff's face and by requiring him to move supplies from the loading dock, though it was not part of his job. Plaintiff complained in writing to the Division chief that Patel was seeking to " ethnically cleanse" the unit of non-Indians by rendering the working conditions of non-Indians intolerable.  The Division chief explained to plaintiff that it was "natural" to want to be surrounded by "your own people."

16.    During his tenure in the Metals Unit under the supervision of Vikram Shah, plaintiff was discriminated against by being punished and reprimanded for conduct for which Indians in the unit were not disciplined.

17.    In 1999, plaintiff was transferred out of the Metals Unit to the Monitoring Unit where he reported to a non Indian.  In October 1999, plaintiff was injured moving samples up the stairs to the laboratory because the elevators were broken.  The injuries were permanent.  Plaintiff's doctors identified him as partially disabled.  Plaintiff was out on workers compensation for six weeks.  When he returned to work, his doctors recommended light duty status.

18.    In fall 2001, Patel appointed Patrick Jagessar, a Guyanese of Indian descent to the position of supervisor of the General Chemistry Lab. He also promoted him to the position of Associated Chemist II, passing over several eligible non-Indians to do so.  Upon information and belief, Patel made this promotion without posting the opportunity and after

misrepresenting to other eligible chemists who were not Indian that there were no promotional opportunities available.

19.    In December 2001, plaintiff was transferred to the General Chemistry Unit under Jagessar's supervision.  Beginning in 2003, Jagessar, with the knowledge and approval of Trikam Patel, harassed plaintiff because of his disability and because of his race and national origin and otherwise engaged in a practice of creating a pervasively hostile environment sufficiently severe to alter the terms and conditions of plaintiff's employment.

20.    In December 2002, plaintiff alerted Jagessar that he was expecting approval from Workers Compensation for further physical therapy for his back and would require medical leave time for treatment.  Jagessar became angry, accused plaintiff of faking his injury, insinuated that if he really had such an injury, he was not welcome in the unit, and accused him not working at all.

21.    With the knowledge and consent of Trikam Patel, Jagessar refused plaintiff's sick leave request resulting in a loss of pay of 2 days.  Two weeks later, with the knowledge and consent of Trikam Patel, Jagessar denied plaintiff's request for an annual leave day to rest his back, this time writing him AWOL resulting in a loss of pay.  On June 2d, with the knowledge and consent of Trikam Patel, Jagessar denied plaintiff's request for another annual leave day to rest his back, marking him AWOL, resulting in a loss of pay.  Upon information and belief, requests by Indians for leave time were not denied under like circumstances and Indians were not marked AWOL under like circumstances.

22.    With the knowledge and consent of Trikam Patel, Jagessar also restricted plaintiff's ability to use his non compensation time to arrive at work late in order to avoid being jostled and bumped on the subway during rush hour and possibly exacerbating his spinal injury.  This was something plaintiff had been permitted to do since he was injured in 1999. Instead, beginning in June 2003, Jagessar wrote plaintiff up as AWOL each time he left work at his regular time, contending that plaintiff was working less than a full day.  Upon information and belief, Indians seeking to use their non compensation time under similar circumstances were not refused and were not written up as AWOL.

23.  Jagessar mimicked plaintiff's shaking, made jokes about his disabling back injury and engaged in other deliberately provocative conduct. When plaintiff responded in kind by calling Jagessar a name, with the knowledge and consent of Trikam Patel, Jagessar initiated disciplinary charges for "action prejudicial to order and discipline." Later, referring to the AWOL write ups, the charge of "absenting himself from his tour of duty" was added to these disciplinary charges.

24.    When plaintiff refused to participate in an informal hearing respecting his latenesses and calling Jagessar a name without the protections of afforded by a formal proceeding, DEP took the position that plaintiff was mentally unfit for his job and sent him for a psychiatric evaluation.  The Disciplinary Counsel reported in a memo initiating the evaluation, without any basis, that at the informal hearing, plaintiff was delusional and paranoid and identified the shaking caused by plaintiff's torticollis disorder as part of

his bizarre behavior.  As a result, plaintiff was subjected, without cause or purpose, to an interview concerning highly personal and disturbing events in his life.  The evaluator concluded that though Golden was under considerable stress, he was fit to perform his job.

25.    Shortly thereafter, plaintiff filed a complaint with the State Division of Human Rights alleging discrimination on the basis of his disability, race and national origin and harassment and retaliation.

26.    In July 2004, after plaintiff filed his complaint with the State Division of Human Rights, DEP management transferred plaintiff to the Marine Science unit.  As an employee of the Marine Science Unit during the summer, Golden would have been required work on a boat in physically hazardous conditions.  Management knew that plaintiff was unable to work on a boat pitching and heaving in the harbor without significant risk to his disabled spine.  When plaintiff complained about the transfer because of its risks, management transferred plaintiff again to another location with considerable hazards to his condition.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Americans With Disabilities Act)

27.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

28.    From the date that plaintiff received his injuries, through the present time, plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 USC §12111(8).  More particularly, plaintiff has a physical impairment which

substantially limits one of more of his major life activities, has a record of such impairment and is regarded by DEP as having such an impairment.

29.    Plaintiff is a "qualified individual with a disability" as that term is defined in §101(8) of the ADA.  Plaintiff is an individual with a disability who with an accommodation can perform the essential functions of his job as Lab Associate I at DEP.

30.    The accommodation requested was that plaintiff be permitted to use his accrued and unpaid non compensation time to travel at other than rush hours and that he given periodic leaves to receive physical therapy and otherwise rest his back.

31.    Despite repeated requests for such permission, DEP refused to grant such accommodations and instead wrote him up as Absent Without Official Leave each time he was absent for medical reasons and/or each time he left work at his regular time, contending that plaintiff was working less than a full day. DEP also brought plaintiff up on disciplinary charges.

32.    DEP's refusal to make reasonable accommodation for plaintiff's physical disability constitutes discrimination against plaintiff with respect to the terms, conditions and privileges of employment.  Such acts constitute a violation of section 102(b)(5)(A) of the ADA.

33.    DEP has failed to undertake any good faith efforts in consultation with Plaintiff to identify and make a reasonable accommodation with Plaintiff.

34.    In failing to make reasonable accommodation to Plaintiff's physical disability, DEP acted with malice or reckless indifference to the federally protected rights of Plaintiff.

35.    As a direct and proximate result of DEP's discrimination on the basis of disability, plaintiff has suffered loss wages and benefits and employment opportunities.

36.    DEP's failure to make reasonable accommodation has caused plaintiff to suffer physical pain, mental anguish, loss of enjoyment of life and other non pecuniary losses.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Discrimination)

37.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 as though fully set forth herein.

38.    By giving plaintiff poor reviews for conduct for which Indians did not receive poor reviews, by refusing to permit plaintiff to use comp time in an manner that was permitted to Indian employees; by charging plaintiff with being AWOL for latenesses, early departures and medical leave days when the same designation was not given to Indians engaging in the same conduct as plaintiff; by sending him for a psychiatric evaluation and by engaging in other instances of disparate treatment, DEP discriminated against plaintiff on the basis of his race and national origin.

39.    Such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000(e) et. seq.

40.    Plaintiff was severely injured by such conduct.  He lost wages and promotions, among other benefits of employment and suffered mental

10

and emotional pain and suffering for which damage plaintiff is entitled to relief from defendant including punitive damages and attorneys fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Harassment)

41.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 40 as though fully set forth herein.

42.    Defendant engaged in conduct the purpose and effect of which was to create an intimidating, hostile and offensive work environment for non-Indians, including plaintiff and for those with disabilities, including plaintiff.

43.    The conduct was sufficiently severe and pervasive to altar the terms, conditions and privileges of his employment and create an abusive work environment.

44.    Plaintiff complained repeatedly to management and to defendant Human Resources Department that the conduct and speech of his supervisors respecting race and national origin and his disabilities was offensive, abusive and unfair to him as a white person and as a disabled person and would be to any reasonable white or disabled person subjected to the same or similar conduct and speech.  But neither management nor the Human Resources Department took any action to prevent the offensive speech or conduct or ameliorate its impact on plaintiff in anyway.

45.    Such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

46.    Plaintiff has been gravely injured by such conduct suffering severe mental and emotion distress and causing him humiliation and a loss

11

of self-respect and to fear for his physical well being for which damage
plaintiff is entitled to relief from defendant including punitive damages and
attorneys fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation)

47.    Plaintiff repeats and realleges the allegations set for in
paragraphs 1 through 46 as though fully set forth herein.

48.    On each occasion that plaintiff reported the misconduct of his
supervisors and of Trikam Patel to management and/or defendant Human
Resources Department, DEP retaliated by not taking any action to stop the
conduct and speech complained of and permitting the conduct to continue.
For example, when plaintiff reported Vikram Shah's and Trikam Patel's
discriminatory practices to the Division Chief, DEP management professed to
see nothing wrong in the conduct, in effect giving Shah and Patel permission
to continue the misconduct.  When plaintiff objected to an informal
proceeding, Disciplinary counsel retaliated by questioning plaintiff's sanity.
When plaintiff complained that he could not work on a boat without risking
serious additional injury to his back, DEP retaliated by transferring him to
another location where the risks to his back was equally severe.

49.    Such retaliatory actions, among others, violate Title VII of the
Civil Rights Act of 1964, 42 U.S.C § 2000e-3.

50.    Plaintiff has been gravely injured by such conduct and is entitled
to equitable relief and compensatory damages therefore, including pain and
suffering, punitive damages and attorneys fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (State Law)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52.     The conduct set forth hereinabove also violates section 296(a) and (e) of the New York State Executive Law.

53.     Defendant is liable to plaintiff for compensatory damages for such violations, including for his pain and suffering.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (New York City Law)

54.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as though fully set forth herein.

55.     The conduct set forth hereinabove also violates 8-107(a)(i) of the New York City Administrative Code.

56.     Defendant is liable to plaintiff for compensatory damages for such violations, including for his pain and suffering and for punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (FMLA)

57.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 56 as though fully set forth herein.

58.     Plaintiff is qualified for leave under the Family Medical Leave Act because he suffers a serious health condition requiring periodic treatment, has worked at least twelve months for the defendant and for 1250 hours over the last 12 months.

59.     Plaintiff duly apprised defendant of the need for such leave in order to get physical therapy for his back injury.  Defendant refused to grant such leave, bringing plaintiff up on disciplinary charges for being AWOL. Such conduct continued throughout plaintiff's assignment to the General Chemistry unit.

60.     Such conduct is a violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2615(a)(1).

61.     Such conduct was willful and malicious and done with the intent of causing plaintiff pain.

62.     Plaintiff has been gravely injured by such conduct and is entitled to compensatory damages in an amount to be determined, liquidated damages and attorneys fees.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### (Negligent Supervision)

63.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 as though fully set forth herein

64.     The conduct herein complained of including the discrimination on account of plaintiff's disability, the discrimination on account of plaintiff's race and nationality, the harassment and retaliation as well as the failure to grant plaintiff the leave to which he was entitled under the FMLA, were all known to management at DEP.  That such conduct was disturbing and emotionally draining to plaintiff and from time to time physically threatening and dangerous to plaintiff was also known to management at DEP.

65.     Notwithstanding, management failed utterly to stop the conduct or take any steps to ameliorate plaintiff's distress, resulting in management

14

being in large measure responsible for the misconduct.  Management, with authority over plaintiff's supervisors, failed to adequately supervise the supervisors and end the misconduct.

66.    This failure on the part of defendant management is actionable as the tort of negligent supervision under the common law of the state of New York.

## AS AND FOR AN NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

67.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68.    As hereinbefore stated, Plaintiff was subjected to discrimination and harassment by his supervisors.  The misconduct of his supervisors caused plaintiff severe mental and emotional distress as well as physical pain.  From time to time, the misconduct put his physical health at risk causing anxiety and apprehension.

69.    The conduct of defendant DEP was extreme and outrageous and intentionally or recklessly caused severe emotional distress to Plaintiff.  Such conduct was undertaken willfully and/or intentionally with a deliberate intent to harm plaintiff or in reckless disregard of the harm such conduct was likely to cause him.

70.    Said conduct by the defendant constituted intentional infliction of emotional distress for which defendant is liable to plaintiff.

15

WHEREFORE, plaintiff seeks judgment against defendant DEP for lost wages, compensatory and punitive damages in an amount to be determined, attorneys' fees and costs and such other and further relief as to this Court seems justified.

Date: New York, New York
      March 22, 2006

                                    Respectfully submitted,

                                    EGAN LAW FIRM

                                    _____
                                    Susan B. Egan (SB 2554)
                                    258 Broadway
                                    Suite 8E
                                    New York, NY 10007
                                    212 619 8456

SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT

_____X

MICHAEL F. GOLDEN,

                      Plaintiffs,               **CERTIFICATE OF SERVICE**

          -against-                    Civil Action No.
                                                06 CV 1587 (DLC)

NEW YORK CITY
DEPARTMENT OF ENVIRONMENT PROTECTION,

                      Defendant

_____X

      The undersigned who is over the age of 18 years of age and not a party to the action served the within documents upon counsel for defendants:

      **Amended Complaint**

by depositing copies thereof in a **U.S. Postal Box** on March 22, 2006 addressed to:

      **Jonathan Bardavid, Esq.**
      **Assistant Corporation Counsel**
      **Corporation Counsel of The City of New York**
      **100 Church Street**
      **New York, NY 10007**

                        Pangeline J. Edwards