```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
MICHAEL GOLDEN,                          :
                    Plaintiff,           :      06 CIV. 1587 (DLC)
                                         :
          -v-                            :      OPINION AND ORDER
                                         :
THE NEW YORK CITY DEPARTMENT OF          :
ENVIRONMENTAL PROTECTION,                :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

Appearances:

Plaintiff Pro Se:

Michael F. Golden
40 Michigan Avenue
Massapequa, New York 11758

For Defendant:

Rippi Gill
Assistant Corporation Counsel
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

Michael Golden ("Golden"), who is now proceeding pro se, is employed by the New York City Department of Environmental Protection ("DEP") as a laboratory associate. He has sued the DEP, complaining principally of race, national origin, and disability discrimination. The disability claim arises from torticollis, which causes involuntary muscle spasms and shaking.

Golden describes discriminatory treatment in the mid-1990s when he was working in the organic laboratory and then the metals unit of the DEP.  In 1999, he was transferred to the sampling unit, and in 2001, to the general chemistry lab.  He next complains of harassment in 2003.  In that year he was served with disciplinary charges for being absent from work without providing proper documentation and for use of profanity against supervisors.  Golden was suspended for five days after an Office of Administrative Trials and Hearings ("OATH") proceeding at which he was represented by counsel.  The administrative law judge ("ALJ") who heard his case ordered this suspension on August 27, 2004.  In July 2004, Golden was transferred to the marine science unit, and is now assigned to the North River Control Center.

Plaintiff's counsel filed this action on February 28, 2006. In the midst of fact discovery, in October 2006, plaintiff's counsel withdrew, and the plaintiff has proceeded since that time pro se.  On March 2, 2007, the defendant filed a motion for summary judgment.

In an amended complaint of March 22, 2006, plaintiff pleaded nine claims.  Five of the claims arise under federal statutes.  Golden asserts a violation of the Americans with Disabilities Act ("ADA"), three claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination,

2

harassment and retaliation, and a violation of the Family Medical Leave Act ("FMLA").

The plaintiff does not oppose the motion to dismiss the ADA and Title VII claims as time-barred.  The EEOC issued a right to sue letter to Golden on October 20, 2005.  Golden was required by statute to file these claims within 90 days of receipt of the letter, which is presumed to occur three days after mailing.  The complaint was filed roughly five weeks late, on February 28, 2006.

Because this disposes of the ADA and Title VII claims, it is unnecessary to resolve the alternative grounds presented by the defendant for dismissing those claims.  It bears noting, however, that one of those alternative grounds is for dismissal of all ADA and Title VII claims arising from acts occurring before September 17, 2003, as time barred by the requirement that a complaint of discrimination be filed with the New York State Division of Human Rights within 300 days of the act of discrimination.  Golden filed his complaint on July 12, 2004.  The amended complaint does not identify any wrongdoing that occurred after September 17, 2003, and almost all of the plaintiff's submissions on this motion concern events occurring before that date.  Golden has not opposed this prong of the defendant's motion either.

As a result, the only remaining federal claim is the FMLA claim. The defendant moves for summary judgment on this claim and asks that the Court decline to exercise supplementary jurisdiction over the state law claims.

The defendant argues that Golden has not identified any violation of the FLMA. It offers evidence that the plaintiff was offered the opportunity to work "flex time" to accommodate any intermittent health problems so long as he worked a full seven-hour day.

Golden does not deny that he was allowed to work a flex-time schedule. In opposition to this motion, the plaintiff explains that his FMLA claim rests on two grounds. First, he was denied leave on March 12 and May 1, 2003 to rest from an injury to his back. He asserts that he had injured his back in 1999 and continues to be plagued by back problems. Second, he was denied permission to use FMLA leave to excuse intermittent early departures from work, which occurred when he felt a need to avoid crowds during rush hour because of a fear that he could aggravate his back injury. Instead of permitting use of such leave, he asserts that the DEP disciplined him for being AWOL. Golden contends that the FMLA does not require him to refer to the FMLA when making requests for these accommodations.

The only evidence to which Golden refers to support this claim is three request-for-leave forms. On February 26, Golden

4

requested three days of sick leave from February 21 to 25 with pay.  It was denied on March 7, with the notation that he was given leave without pay because he had two working days to submit "proper documentation."  On March 13, 2003, Golden requested annual leave with pay for March 12, and on May 2, 2003, Golden requested annual leave with pay for May 1.  Both were denied with the notation "AWOL."  Golden wrote on the latter two forms that the reason for the request was "resting workers comp injury while therapy is denied."

Although Golden does not refer to any other specific evidence to support his FMLA claim, an explanation of what lies behind this claim can be found in the August 27, 2004 decision by the ALJ following the OATH hearing.  She summarized the testimony of Golden and his supervisor concerning the plaintiff's hours.  The supervisor testified that he informed Golden on June 5, 2003 that he could start his job each day at any point between 7:30 a.m. and 8:30 a.m., but had to work a full seven hours or submit a leave slip.  At that point Golden insulted the supervisor.  After the meeting, Golden continued his pattern of leaving work early without submitting leave slips.  Golden was given a written warning about the unauthorized departures on September 2, and then left early on fifteen days between September 9, 2003 and March 18, 2004, without obtaining authorization.

5

At the hearing, Golden admitted using offensive language in the June 5 meeting. He also explained that he needed to avoid crowded subways because of his back condition. He asserted that before the June 5 meeting he had not been required to make up time at the end of the day if he were late or to submit forms requesting leave. He admitted being advised on June 5 that he would be required to work seven hours a day. Golden asserted that he also understood from that conversation that he would no longer be able to use compensatory time to cover any lateness and, as a result, he no longer submitted leave slips.

The ALJ concluded that Golden had insulted his supervisor and used profanity in the June 5 meeting. She found that it was the department procedure to require all employees to submit a leave slip if they could not be present the full seven hours of a workday, and that Golden was advised of this orally on June 5, and in writing on September 2. After the written warning, on fifteen separate occasions Golden did not seek authorization to work less than the full seven hours. The ALJ also found that the leave time would have been approved if Golden had submitted leave slips, but that even if Golden believed it would not be approved, he was required to submit the slips.

Based on this record, it appears that Golden was denied leave with pay on three occasions in 2003, and was not permitted to use leave time to complete his seven-hour workday on fifteen

6

occasions in 2003 and 2004.  It appears that Golden has succeeded in raising a question of fact that on each occasion he was suffering from a pre-existing back injury.  For its part, DEP refused the request for paid leave or disciplined Golden because he did not comply with its procedures for obtaining leave.  Before examining whether the DEP is entitled to summary judgment on this claim, it would be helpful to describe the governing law.

The FMLA requires covered employers to grant employees who have worked for twelve months up to twelve weeks' leave during any twelve-month period "'[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)(D)).  Among other things, the FMLA provides protection in the event that an employer interferes with an attempt by an employee to exercise rights under the statute: "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).

One definition of a serious health condition is an injury or illness requiring "continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  FMLA regulations list several categories of conditions which fall under subsection (B),

including a "chronic serious health condition."  See 29 C.F.R. § 825.114(a).  A "chronic serious health condition" is defined as a condition which involves periodic visits to a health care provider for treatment, lasts over extended period of time, and may cause episodic periods of incapacity.  Id. § 825.114(a)(2)(iii).

In order to be protected by the FMLA, an employee must provide the employer with appropriate notice of an absence.  29 C.F.R. §§ 825.302(c), 825.303(b).  There are separate regulations that apply when the need for FMLA leave is foreseeable, and when it is not.  In the case of a foreseeable need, notice should be given at least 30 days in advance if possible, or "as soon as practicable."  Id. § 825.302(a).  Ordinarily this means one to two business days of when the need for leave becomes known to the employee. Id. § 825.302(b).  An employer is expressly authorized to require an employee "to comply with the employer's usual and customary notice and procedural requirements for requesting leave."  Id. § 825.302(d).

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.

8

Id. § 825.303(a).  The employee is permitted by the regulations to provide telephone or facsimile notice.  Id. § 825.303(b).

The regulations also address the content of the notice that should be given.  The regulations for foreseeable and unforeseeable leave differ in this regard as well.  In the case of a foreseeable need for leave, the regulations require an employee to

> make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example.  The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.

Id. § 825.301(c).

In the case of an unforeseen need for FMLA leave, the regulations are less extensive.  They provide that "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The employer will be expected to obtain any additional required information through informal means."  Id. § 825.303(b).

Thus, in assessing notice under the FMLA, "[t]he critical question is whether information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  Walton v. Ford

9

Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (citation omitted). When it comes to the timing of the notice and its content, "[w]hat is practicable . . . will depend upon the facts and circumstances of each individual case." Id. (citation omitted).

FMLA leave is generally unpaid. 29 C.F.R. § 825.207(a). "The FMLA allows employees or employers 'to substitute any of the accrued paid . . . sick leave . . . for . . . any part of the 12-week period of such leave provided for in the FMLA.'" Santos v. Knitgoods Workers' Union, Local 155, 252 F.3d 175, 178 (2d Cir. 2001) (citing 29 U.S.C. § 2612(d)(2)(B)). FMLA does not, however, require an employer to provide paid leave in circumstances where it would not ordinarily be available. Id. Thus, an employee may not substitute paid sick leave for unpaid FMLA leave needed to deal with a serious health condition unless the employer's leave plan covers that condition. 29 C.F.R. § 825.207(c).

> An employer may waive employees' FMLA notice requirements. In addition, an employer may not require compliance with stricter FMLA notice requirements where the provisions of a collective bargaining agreement, State law, or applicable leave plan allow less advance notice to the employer. For example, if an employee (or employer) elects to substitute paid vacation leave for unpaid FMLA leave . . . and the employer's paid vacation leave plan imposes no prior notification requirements for taking such vacation leave, no advance notice may be required for the FMLA leave . . . . On the other hand, FMLA notice requirements would apply to a period of unpaid FMLA leave, unless the employer imposes lesser notice requirements on employees taking leave without pay.

10

29 C.F.R. § 825.302(g).

Because the parties did not address the legal framework for an FMLA claim, it is difficult to assess precisely what issues concerning the FMLA claim may require a trial. Based on the parties' submissions on the instant motion, however, it would appear that DEP may be entitled to summary judgment on the entire FMLA claim because, inter alia, Golden did not comply with DEP's "usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d). Because this is the sole remaining federal claim, and the plaintiff is proceeding pro se, the parties will be given a renewed opportunity to address the defendants' motion for summary judgment on the surviving FMLA claim.

CONCLUSION

Summary judgment is granted for the defendant on the Title VII and ADA claims. Decision is reserved on the remaining claims pending additional briefing pursuant to a scheduling order being issued today.

SO ORDERED:

Dated: New York, New York
August 10, 2007

_____
DENISE COTE
United States District Judge

COPIES SENT TO:

Michael Golden
40 Michigan Avenue
Massapequa, NY 11758

Rippi Gill
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007